**McKool Smith, P.C.**
One Manhattan West
395 Ninth Avenue
New York, NY 10001
Tel. 212-402-9400
Fax. 212-402-9444
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANCED SPINAL CARE & ASSOCIATES LLC <br><br> Plaintiff, <br><br> v. <br><br> HORIZON HEALTHCARE SERVICES, INC. dba HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY <br><br> Defendant. | Civil Action No.: _____ <br><br> **COMPLAINT** <br> **AND JURY DEMAND** |

Plaintiff Advanced Spinal Care & Associates LLC ("Advanced Spinal"), by and through its attorneys, McKool Smith, P.C., alleges as follows in support of its Complaint against Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon").

## INTRODUCTION

1. Advanced Spinal is in the business of changing lives. Its principals are board-certified orthopedic surgeons who specialize in the diagnosis and treatment of complex spinal disorders of the cervical, thoracic, and lumbar spine. Treating a wide-range of neck and spine disorders, Advanced Spinal transforms the lives of its patients through surgical intervention. Performing complex surgeries—surgeries that can last more than six hours and require multiple surgeons—using state-of-the-art therapies and techniques, Advanced Spinal routinely treats and corrects debilitating conditions like pediatric scoliosis, spinal stenosis, spina bifida, and other spinal deformities including kyphosis, lordosis, and flat back. As a leader in its field, Advanced Spinal is one of the few New Jersey medical practices that cares for both children and adults with spinal deformities. The physicians at Advanced Spinal practice primarily out of Morristown Medical Center where, in addition to the foregoing, they treat trauma patients transferred there to receive complex spinal care. Advanced Spinal works miracles for its patients.

2. Horizon refuses to pay Advanced Spinal for the life-altering services it provides. While the transformative services Advanced Spinal provides are not cheap, the impact those services have on its patients' lives is priceless. To put Horizon's non-payment practice in perspective, Advanced Spinal seeks to recover payment for 836 distinct medical services provided between March 2019 and July 2023.

3. FAIR Health holds itself out as a national independent, not-for-profit company established following the New York Attorney General's office review of out-of-network reimbursement methodologies. FAIR Health collects data from billions of medical claims per year from more than 60 health plans, insurance carriers (including Horizon Blue Cross Blue Shield of New Jersey), and third-party administrators. Relying on its database of more than 75 billion billed medical services from all 50 States, FAIR Health arranges charges for 10,000 services from low to high and calculates the cost percentiles for a particular service in a specific geographic area.

4. Advanced Spinal's billings are consistent with the services provided or common billing practices. For these 836 claims, Advanced Spinal referenced the Fair Health tables and, consistent with the 90th percentile rates, billed Horizon just about $159 million dollars. Advanced Spinal received less than $22 million dollars for these services—or about 13% of the properly billed amount. For several hundreds of these claims, Horizon paid Advanced Spinal just 3% or less. Even though the FAIR Health published rates are subject to downward manipulation by the insurance companies, the FAIR Health rates nonetheless confirm that Horizon owes Advanced Spinal nearly $138 million for the services it rendered to Horizon insureds.

5. Advanced Spinal is an "out-of-network" provider that does not have a written agreement with Horizon. Many employers nonetheless choose Horizon plans that provide their employees access to out-of-network healthcare providers so the employees can choose the best available care. Consistent with this benefit, Horizon members routinely seek care from Advanced Spinal. Horizon is obligated to pay Advanced Spinal for the care and treatment its doctors provide to the Horizon subscribers.

6. The employers establish welfare benefit plans ("Plans") for their employees and their families.[1] The Plans typically define the rate that Horizon shall reimburse out-of-network providers using reference payment levels published by FAIR Health. Some of the largest Plans in the State of New Jersey require Horizon to pay out-of-network medical professionals at the 90th percentile of the FAIR Health benchmark. Horizon does not pay Advanced Spinal at that rate.

7. Instead, Horizon engages in schemes and tactics to avoid paying out-of-network providers, including Advanced Spinal, for the medical services they render. Even when Horizon does pay, its payments are so varied—even for identical services—that Horizon has no plausible justification or principled basis for determining the amount of any given payment.

8. Dating back to 2018, Advanced Spinal submitted thousands of claims to Horizon for its treatment of Horizon-insured patients. Rather than simply paying Advanced Spinal what the Plans require, Horizon slow rolls payments to out-of-network providers in an effort to frustrate and coerce out-of-network providers to accepting a fraction of the billed amount—amounts well below what the Plans require Horizon to pay. In furtherance of this scheme, Horizon also commonly engages third-party repricing companies to drag on billing "negotiations" for months. If Horizon thinks a particular repricing company is ineffective, then it shifts the "negotiation" responsibility to another repricing company and the process restarts.

9. On information and belief, discovery will confirm that, after taking into account co-insurance, cost-share and deductibles, Advanced Spinal was paid less than $22 million of the nearly $159 million Advanced Spinal billed meaning that Horizon underpaid Advanced Spinal by

---

[1] Some individuals purchase fully insured medical coverage from Horizon, but this is less common. Such individuals also may elect to have out-of-network coverage as part of their medical insurance package.

nearly $138 million.  A summary spreadsheet detailing Horizon's non-payment and underpayment is attached as Exhibit A.[2]

10.     Under the Plans, Horizon is obligated to pay Advanced Spinal for the full-unpaid balance of the Horizon claims totaling almost $138 million.  Because Horizon subscribers continue to seek treatment from Advanced Spinal, the non-payment and underpayment amounts continue to accrue.

### THE PARTIES

11.     Advanced Spinal is a limited liability company organized under the laws of the State of New Jersey with a principal place of business is at 160 East Hanover Ave, Suite 201, Morristown, NJ 07960.  Advanced Spinal includes three board certified, internationally recognized spine surgeons, Dr. Charles A. Gatto, Dr. Jason E. Lowenstein, and Dr. George S. Naseef.  At all relevant times and for all claims at issue in this Complaint, Advanced Spinal was outside of Horizon's provider network.

12.     Defendant Horizon is the only Blue Cross and Blue Shield Association licensee authorized to operate in New Jersey.  Its principal place of business is 3 Penn Plaza East, Newark, New Jersey 07105.

---

[2]      To protect the private health information of the Horizon Subscribers, Plaintiff has filed Exhibit A under seal. Plaintiff will provide unredacted versions of Exhibit A, upon request and in accordance with any confidentiality order that may be entered by the Court. Further, Exhibit A is subject to amendment in light of any new information Advanced Spinal may learn as it continues its analysis or during discovery.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

14.     This Court has supplemental jurisdiction over Advanced Spinal's state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form a part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over Horizon because Horizon engages in substantial business activity within this judicial district, including the conduct at issue in this action.

16.     Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b)-(c).

**FACTUAL ALLEGATIONS**

**I.      EMPLOYEES, INDIVIDUALS, AND PLAN SPONSORS PURCHASE MEDICAL INSURANCE COVERAGE FROM HORIZON**

17.     Horizon is the largest health insurance company in the State of New Jersey.  It provides health insurance coverage and services to more than 3 million New Jersey residents. Horizon is licensed by the New Jersey Department of Banking and Insurance to offer medical insurance and related products in the State.  Horizon markets and sells medical insurance coverage and services to individuals, large and small businesses, unions, religious organizations, and government entities throughout the State.

18.     Smaller businesses and individuals typically buy "fully insured" coverage.  In fully insured plans, the insured pay a monthly premium and in exchange Horizon pays incurred medical expenses and bears the financial risk if the paid-for medical expenses exceed the premium amounts it collects.

19. In contrast, larger employers and non-employer plan sponsors frequently opt to "self-fund" their medical expenses. In self-funded plans, insurance companies (such as Horizon) serve as the "administrator" of the benefits plan. Horizon, as administrator, is responsible for setting forth the relevant coverages, coverage options, various plans, deductibles, co-pays, cost-shares, exclusions, etc. in documents provided to or made available to the employer, plan sponsor, or individual purchaser ("Summary Plan Descriptions"). Unlike the fully-insured plans, large employers pay the medical expenses (as determined by Horizon) out of their own funds and bear the financial risk of increasing medical expenses.

20. The Summary Plan Description or "SPD" generally sets forth whether the plan includes coverage services provided by "out-of-network" providers, such as Advanced Spinal. The SPDs generally dictate the terms on which "out-of-network" providers are to be compensated for the care and treatment of Horizon-covered patients. To ensure that employees and other beneficiaries have access to the best providers and have the broadest choice of providers, employers and other plan sponsors frequently pay a higher relative amount for the "out-of-network" benefit.

## II. HORIZON MUST PAY OUT-OF-NETWORK PROVIDERS

### A. Out-of-Network and In-Network Providers

21. Under the Plans, providers are either "in-network" or "out-of-network" with respect to any given health insurance company. "In-network" providers contract with a health insurance company and agree to accept a negotiated rate as payment for covered services. In consideration for accepting those discounted rates, the health insurance company lists in-network providers as preferred providers ("in-network" providers are also referred to as "participating" providers) and funnels subscribers to the in-network providers. "Out-of-network" providers do not have formal,

written contracts with the health insurance company. "Out-of-network" providers may also be referred to as "non-participating" providers.

22. At all relevant times, Advanced Spinal was an "out-of-network" or "non-participating" provider for Horizon.

23. The claims at issue reflect Advanced Spinal's care for hundreds of Horizon subscribers. Horizon subscribers often pay higher premiums for access to and coverage for "out-of-network" providers such as Advanced Spinal.

### B. The Plans Dictate How Horizon Calculates Reimbursements to Out-of-Network Providers

24. To entice out-of-network providers to provide services to Horizon subscribers, Horizon represents that it will fairly compensate out-of-network medical professionals with the knowledge and expectation that out-of-network providers, like Advanced Spinal, will rely upon that representation and provide services to Horizon subscribers. For non-emergent medical services, out-of-network providers, Advanced Spinal included, reference and rely upon these representations when determining whether to provide services to Horizon Plan enrollees.

25. Horizon publicly represents that it "uses many sources to calculate its reimbursement rate … including industry resources provided by entities such as FAIR Health, the Centers for Medicare & Medicaid Services ("CMS"), and other databases [*e.g.*, OptumInsight]." Upon information and belief, the primary benchmark Horizon uses to calculate the Plans' payments to out-of-network providers is FAIR Health.

26. FAIR Health is the out-of-network payment standard referenced in some of Horizon's largest Plans. Upon information and belief, the Plans that rely on FAIR Health typically provide for out-of-network reimbursement rates at the higher "percentiles" of billed charges. The

exact percentile depends on the particular enrollee's Plan. For example, Merck, Inc.'s publicly available Summary Plan Description provides:

> Out-of-Network Benefit: If you or your Covered Dependents receive care from an Out-of-Network provider, the Medical Plan will pay 80% of covered expenses up to the Reasonable and Customary (R&C) Limit and you will be responsible to pay 20% of covered expenses up to the Reasonable and Customary (R&C) Limit and you will be responsible to pay 20% of covered expenses up to the R&C Limit and 100% of covered expenses over the R&C Limit.

Merck SPD at 26.

27. The Merck SPD defines the "Reasonable & Customary Limit" for out-of-network providers at 90% of FAIR Health. Merck SPD at 40-45 n.1 (emphasis added).

28. Upon information and belief, a minority of Plans provide for Horizon to compensate out-of-network providers at a percentage of the rates published by CMS. By way of example, the AdvanSix Plans' Summary Plan Description provides that the allowed amount "will be (a) the actual charge made by the provider for the service or supply; . . . or (c) in the case of Out-of-Network Providers, the amount determined as 250% of the amount that would be reimbursed for the service or supply under Medicare." AdvanSix Summary Plan Description at 10 (emphasis in original). Plans that base compensation off of a percentage of CMS rate are the exception, not the rule.

29. Generally, SPDs are not publicly available.

30. The services provided by Advanced Spinal are extraordinarily complex, require incredible and unique skill, and are being performed in one of the most expensive markets in the country. The amount that Advanced Spinal billed for those services is in line with 90% of FAIR Health and, upon information and belief, is equal to or less than the amount Horizon is required to reimburse Advanced Spinal under the Plans.

### C. Horizon Service Pre-Approval

31.     Before treating a Horizon-covered patient in a non-emergent situation, Advanced Spinal's practice is to obtain confirmation from Horizon that the patient is covered by Horizon insurance, whether fully insured or self-insured coverage.  Advanced Spinal verifies the patient's eligibility, obtains pre-authorization for the procedure, obtains information regarding the patient's financial responsibility for the service (co-pay and cost-share), and informs the patient of his or her financial responsibility—the maximum amount of the patient's liability for the treatment.  This occurs via a HIPAA-governed EDI transaction that includes a Horizon-assigned pre-authorization number.

32.     In some instances, someone in Advanced Spinal's office(s) will obtain pre-authorization from a Horizon employee to confirm that Horizon covers the service, treatment, or procedure and gets verbal and recorded confirmation and/or written confirmation that Horizon will pay for the service, treatment, or procedure.

### D. Advanced Spinal Has Complete Assignment of Benefits From the Horizon Subscribers

33.     In addition, Advanced Spinal's practice is to obtain from the patient (or the patient's authorized representative) an assignment of benefits under these respective Plans.  Through the assignment of benefits, Advanced Spinal obtains the right to seek reimbursement or payment from an insurer for covered services provided to the patient.  Advanced Spinal has assignments for each of the claims at issue.  As part of the pre-approval process, Horizon acknowledges that Advanced Spinal has a valid assignment of benefits.

34.     The assignment of benefits signed by each patient (or the patient's authorized representative) reads as follows:

**PATIENT FINANCIAL RESPONSIBILITY, CONSENT & ASSIGNMENT OF BENEFITS FORM**

**Assignment of Benefits/Consent to Treat**

I hereby give my authorization to treat and assign all medical and surgical benefits, to include major medical benefits to which I am entitled, to The Advanced Spine Center, including but not limited to, my right to appeal and sue for reimbursement and benefits. I hereby authorize and direct my insurance carrier(s), including Medicare, private insurance and any other health/medical plan, to issue payment check(s) directly to The Advanced Spine Center for medical services rendered to myself and/or my dependents regardless of my insurance benefits, if any. I understand that I am responsible for any amount not covered by insurance. I understand and agree that should my insurance carrier(s), including Medicare, private insurance and any other health/medical plan, issue payment direct to me instead of The Advanced Spine Center, all such payments shall be expressly held in trust by me for the benefit of The Advanced Spine Center; and I shall immediately endorse and tender said payment over to The Advanced Spine Center.

I hereby assign my rights, title and interest under the medical expense section and/or PIP section of my insurance policy to The Advanced Spine Center to bring a lawsuit or arbitration against my insurance carrier(s). This allows The Advanced Spine Center to retain an attorney of their choice to filing litigation or arbitration for any unpaid medical expenses, and/or denied proposed medical treatment, against my insurance carrier, or any other company, against which I may proceed for medical expense benefits. Unless revoked, this assignment is valid for all administrative and judicial reviews under the Patient Protection and Affordable Care Act, ERISA, Medicare and applicable federal or state laws. A photocopy of this assignment is to be considered as valid as the original.

35. On information and belief, the Plans do not prohibit the Horizon subscribers from assigning their Plan benefits to Advanced Spinal and most expressly permit the Horizon subscribers to assign their benefits to health care providers such as Advanced Spinal; others are silent on the issue. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372-73 (3d Cir. 2015) ("We hold that as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a). An assignment of the right to payment logically entails the right to sue for non-payment."). Horizon conceals or hides the name of the employer or Plan sponsor on the 835s

- 11 -

or Electronic Remittance Advice it returns to Advanced Spinal for each claim. For fully insured claims, Horizon does not disclose who purchased the fully insured policy.

36. A few Plans do contain so-called "anti-assignment" clauses that purport to prohibit the patient (or the patient's representative) from assigning benefits or the right to benefits under any plan administered by Horizon to any third party. These are the exception and not the rule. Most of the Plans known to Advanced Spinal do not contain anti-assignment provisions.

37. When anti-assignment clauses do appear in Summary Plan Descriptions, however, they read something like the following:

No Assignment of Benefits

The Plan prohibits assignment of benefits. All rights to benefits under the Plan are personal to you. Your rights and benefits under the Plan cannot be assigned, sold, or transferred to a third party, including your healthcare provider. This includes the right to payment or reimbursement for benefits under the Plan and your right to file a lawsuit to recover benefits due to you under the Plan. Any purported assignment of rights or benefits is void and will not be recognized by the Plan.

The Claims Administrator may issue payments directly to your providers for covered services that you receive (whether or not pursuant to an authorization). The Claims Administrator's payment to your provider, however, does not create an assignment of benefits and it will not constitute a waiver of the application of this anti-assignment provision.

The prohibition of assignments does not take away your ability to designate an authorized representative to file claims for benefits or to file appeals as part of the Plan's internal claims and appeals process.

AdvanSix Summary Plan Description at 99-100.

### E. Horizon Waived the Applicability of Any Anti-assignment Clause

38. As discussed above, if a Plan has an anti-assignment clause or provision, then that clause or provision appears in a Plan's Summary Plan Description.

39. Health insurance companies can waive the applicability of any anti-assignment clause that a plan document may impose through the companies' conduct or omissions.

40. Horizon, through its conduct and through the conduct of its agents, waived the applicability of, and/or is estopped from enforcing, any anti-assignment clause to prevent, interfere, or otherwise obstruct the payment of any claim directly to Advanced Spinal. Horizon and its agents have done so through verbal representations, written representations, and conduct.

41. At all times relevant to the claims at issue, the repricing companies acted as authorized agents of Horizon and acted within the scope of their authority. Alternatively, at all times relevant to the claims at issue, the repricing companies acted as apparent agents of Horizon and acted within the scope of their apparent authority. At no time relevant to the claims at issue did Horizon inform Advanced Spinal that the repricing companies engaged in claim-specific discussions or correspondence on Horizon's behalf were not agents of Horizon.

42. The purpose of the anti-assignment clause has nothing to do with payment of providers who care for, treat, or cure Horizon-insured patients. Its purpose is to prevent Horizon-insured patients from sharing their health insurance card with non-insured or under-insured people to obtain coverage for care or treatment. Horizon has intentionally misinterpreted this restriction to interfere with the obligation to pay for properly rendered medical services.

43. Horizon has waived its right to invoke, or alternatively, is estopped from invoking, any anti-assignment clause for the following reasons:

- Horizon acknowledged before patients were treated that the patients had insurance coverage through Horizon and identified the maximum amount of patient out-of-pocket responsibility for each service.

- When Horizon accepted the original HCFA or 837 EDI transaction, each was identified as being submitted for payment pursuant to an assignment. Horizon never rejected an HCFA or 837 EDI transaction for any claim at issue on the basis that it was submitted pursuant to an improper "assignment."

- In the last six years, Horizon has never rejected any Advanced Spinal claim, including those at issue, on anti-assignment grounds.

- On information and belief, and discovery will confirm, Horizon identifies each claim or claim line as being a claim submitted pursuant to a proper assignment. Such treatment would be consistent with the manner in which other large health insurance companies track claim-specific data internally. Horizon never rejected any Advanced Spinal claim at issue on the grounds that it was subject to an anti-assignment clause.

- On information and belief, and discovery will confirm, Horizon transmits medical claims information to NASCO for adjudication purposes. In other words, Horizon does not adjudicate the claims submitted to it, but delegates that responsibility to NASCO, a wholly owned subsidiary of Blue Cross Blue Shield of Michigan. On information and belief, the medical claims information that Horizon transmits to NASCO for adjudication includes a claim field reading that each claim was submitted for payment pursuant to a proper assignment of benefits.

- Horizon does not track, nor does it have the ability to track for purposes of claims adjudication, whether a claim submitted relates to a Plan that may have an anti-assignment clause in its SPD.

- Neither Horizon nor NASCO refer to any particular Plan's Summary Plan Description when adjudicating claims, much less any specific clause or section.

- On information and belief, and discovery will confirm, neither Horizon nor NASCO claims adjudication rules or claim processing rules for the largest Plans contain descriptions or notations that the Plan is subject to an anti-assignment clause.

- For the past six years, Horizon regularly makes payments directly to Advanced Spinal whether the patient was in a Plan with an anti-assignment provision in the Plan's SPD or not.

- Horizon has an affirmative, regulatory obligation to notify Advanced Spinal of *all* grounds for adjustment or non-payment. When generating 835s or Electronic Remittance Advice to return to Advanced Spinal in connection with each claim, Horizon has never included a comment, statement, or justification that the claim was accepted, adjusted, or paid less than the charged amount as a result of a Plan-specific anti-assignment clause.

- As discussed in Section V regarding Exhaustion of Remedies, Advanced Spinal has engaged in hundreds of appeals, inquiries, and negotiations regarding the claims at issue. No appeal, inquiry, or negotiation has been rejected by Horizon or by any repricing company acting on its behalf as a result of an anti-assignment clause in any Plan.

- Further, in connection with any specific appeal, inquiry, or negotiation, representatives of Horizon or agents of Horizon working for the repricing companies have never invoked the anti-assignment clause as a justification for the resolution of or position regarding any claim-specific appeal, inquiry, or negotiation. To the contrary, in the hundreds of hours of recordings of these negotiations, the Horizon employees or the employees of the repricing companies acting on Horizon's behalf, freely admit that they do not have before them and have never reviewed the Summary Plan Description of the Plan to which the claim may pertain. Many case representatives even admit that they do not know what a Summary Plan Description is.

- In response to the hundreds of claims Advanced Spinal has submitted for reimbursement, Horizon responded not by rejecting the claims as being in violation of the anti-assignment provision of any Plan, but by (a) initiating a Special Investigations Unit inquiry before any claim was paid, (b) requesting additional information related to the claim, including a request for patient medical records, or (c) trigging some other type of pre-payment review or condition.

44. Based on the investigation conducted as of the date of this Complaint, Advanced Spinal is not aware of a single claim at issue that Horizon rejected because of an anti-assignment clause.

### F. HIPAA Requires Horizon to Deal With and Pay Advanced Spinal Irrespective of any Anti-Assignment Provision

45. HIPAA governs transactions among health plans, health insurers, and providers. The applicable statutes and regulations cannot be avoided or abrogated by agreement—including a provision in a health plan being invoked for reasons other than its intended purpose—to avoid a payment obligation.

46. Horizon has represented to licensing bodies and regulatory agencies that it complies with all applicable HIPAA regulations.

47. Horizon has represented and warranted in agreements with its customers that it complies with all HIPAA regulations.

- 15 -

48. The HIPAA regulations *require* Horizon to pay Advanced Spinal independent of any potentially applicable anti-assignment clause.

49. HIPAA, as augmented by the Affordable Care Act and supporting regulations, requires health care transactions to be conducted in a certain manner and requires certain standard EDI transactions of all participants in the health care ecosystem. 42 U.S.C. § 1320d-1(a). This "Administrative Simplification" is mandatory. The EDI data sets are known as the "standard transactions." 45 C.F.R. § 162.103

50. The applicable regulation provides that "[i]f an entity requests a health plan to conduct a transaction as a standard transaction, *the health plan must do so*." 45 C.F.R. § 162.925(a)(1) (emphasis added). In addition, the regulation requires health plans to "[a]ccept *and promptly process* any standard transaction that contains codes that are valid, as provided in subpart J of this part." *Id*. § 162.925(c)(1) (emphasis added); *see id*. § 162.923(a) ("General rule. Except as otherwise provided in this part, if a covered entity conducts, with another covered entity that is required to comply with a transaction standard adopted under this part (or within the same covered entity), using electronic media, a transaction for which the Secretary has adopted a standard under this part, the covered entity must conduct the transaction as a standard transaction.").

51. For purposes of this regulation, Horizon is a "health plan." "Health plan means an individual or group plan that provides, or pays the cost of, medical care (as defined in section 2791(2) of the PHS Act, 42 U.S.C. 300gg-91(a)(2))." The regulations define "health plan" to include "health insurance issuer." 45 C.F.R. § 160.103 (defining "health plan). A health insurance issuer "means an insurance company, insurance service, or insurance organization (including an HMO) that is licensed to engage in the business of insurance in a State and is subject to State law

that regulates insurance." *Id*. Horizon is an "insurance company." Horizon is licensed to engage in the business of insurance in the State of New Jersey.

52. Advanced Spinal is a "covered entity." *See* 45 C.F.R. § 160.103 (defining "covered entities" to include "health care providers," which includes "a provider of medical or health services (as defined in section 1861(s) of the Act, 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business.").

53. The request for payment by the submission of an 837 is a request to "conduct a transaction as a standard transaction." 45 C.F.R. § 162.925(a)(1). The request for payment is a "transaction," defined as "the transmission of information between two parties to carry out financial or administrative activities related to health care. It includes the following types of information transmissions: (1) Health care claims or equivalent encounter information. *(2) Health care payment and remittance advice* . . . (4) Health care claim status . . . (10) Health claims attachments. *(11) Health care electronic funds transfers (EFT) and remittance advice.*" 45 C.F.R. § 160.103 (emphasis added).

54. The transmission of a request for payment/remittance advice in the form of an 837 is a "standard transaction." A "standard transaction" is "a transaction that complies with an applicable standard and associated operating rules adopted under this part [Part 162 – Administrative Requirements]." 45 C.F.R. § 162.103. Compliance with the applicable standard and operating rules are mandatory for "covered entities," which includes health plans like Horizon. 45 C.F.R. § 162.100 ("Covered entities (as defined in § 160.103 of this subchapter) *must comply with the applicable requirements of this part*.") (emphasis added). Pursuant to 45 C.F.R. § 162.1101, the "health care claims or equivalent encounter information transaction is the transmission of either of the following: (a) *A request to obtain payment, and the necessary*

- 17 -

*accompanying information from a health care provider to a health plan, for health care….*" 45 C.F.R. § 162.1101(a) (emphasis added). The standard for a request for payment submitted by a health care provider providing professional health care claims after January 1, 2012 is defined, by regulation, as the "ASC X12 Standards for Electronic Data Interchange Technical Report Type 3 - Health Care Claim: Professional (837), May 2006, ASC X12N/005010X222. 45 C.F.R. § 162.1102(b)(2)(iii), (c); *see id*. § 162.920.

55. In other words, anti-assignment provision or not, Horizon has to accept and process a claim for payment submitted pursuant to the 837. Horizon has done so for all of the claims on Exhibit A because it responded to each of the 837s submitted with a corresponding and responsive 835. *See* 45 C.F.R. § 162.1602 (Standards for health care electronic funds transfers (EFT) and remittance advice transaction – requiring use of "the ASC X12 Standards for Electronic Data Interchange Technical Report Type 3, Health Care Claim Payment/Advice (835), April 2006, ASC X12N/005010X221."). In short, because the regulatory framework requires Horizon to accept and process transactions submitted by out-of-network doctors, including to make payments on properly submitted claims, it cannot rely on an anti-assignment clause to avoid that legal obligation.

### III. HORIZON IS AN ERISA FIDUCIARY FOR MOST OF THE PLANS AT ISSUE

56. Horizon serves as the named claims administrator for the Plans and has discretion over the payment of claims. As the designated claims administrator, Horizon is an "administrator" under ERISA. 29 U.S.C. § 1002(16)(A)(i). Horizon also offers fully-insured Plans, which are funded by Horizon itself, not the sponsoring employers or other entities. For government-sponsored or church-sponsored Plans, which are not subject to ERISA, Horizon also acts as a fiduciary.

- 18 -

57.     ERISA provides that a "person" is a "fiduciary" with respect to a plan to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "Person" is defined broadly and encompasses corporations such as Horizon. *Id.* § 1002(9).

58.     Horizon qualifies as a fiduciary of all ERISA-covered Plans, *i.e.*, both those for which it serves as an administrator and those that it fully insures, because, in both cases, Horizon exercises authority and/or control respecting management or disposition of the Plan assets.

59.     ERISA requires that Horizon, as a fiduciary, must "discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries," including Advanced Spinal, as assignees of the Horizon subscribers. 29 U.S.C. § 1104(a)(1)(A)(i). Fiduciary status under ERISA may exist even if the plan documents purport to disclaim that Horizon is a fiduciary.

60.     In performing services for the ERISA Plans, Horizon must not cause the Plans to engage in a transaction Horizon knows or should know constitutes a transfer to, or use by or for the benefit of, Horizon of any ERISA Plans assets. 29 U.S.C. § 1106(a)(1)(D).

61.     As the Plans' fiduciary, Horizon must not "deal with the assets of the plan in [its] own interest or for [its] own account . . ." 29 U.S.C. § 1106(b)(1).

62.     Horizon has been assigned discretionary authority to perform an ERISA-required full and fair review of each claim denial that has been appealed by Advanced Spinal or an Advanced Spinal duly authorized representative. 29 U.S.C. § 1133(2). Accordingly, the ERISA regulations require that Horizon also provide upon request and free of charge, reasonable access

to, and copies of, all documents, records, and other information relevant to Advanced Spinal's individual claims for benefits. 29 C.F.R. § 2560-503.1(h)(2)(iii).

63. The applicable regulations require additional information be provided beyond the above information, and provide that any review does not afford deference to any initial adverse benefit decision and is conducted by an appropriate named fiduciary who is neither the individual who made the adverse benefit decision that is the subject of the appeal, nor the subordinate of such individual. 29 C.F.R. § 2560-503.1(h)(3).

### IV. HORIZON'S REFUSAL TO PAY

#### A. Advanced Spinal Submits Claims for Payment to Horizon for the Care and Treatment of Horizon-Insured Patients

64. Advanced Spinal's surgeons and other employees rendered the services referenced in the claims at issue.

65. After Advanced Spinal has treated the patient, a treatment record is created and a standard billing form—CMS-1500 Health Insurance Claim Form—or "HCFA" is prepared. This is essentially a bill prepared by Advanced Spinal that is submitted to Horizon. The HCFA form contains a check-box—No. 27—to indicate whether the bill is submitted pursuant to an accepted assignment.

66. In parallel and increasingly more common, the information in the HCFA form is translated into a specific, regulation-required ANSI X12 5010 format EDI data set referred to as an "837." As is customary in the industry, Advanced Spinal transmits the EDI bill electronically to Horizon.

67. Advanced Spinal also complies with Horizon's Companion Guides, which provide "instructions for electronic communications with [Horizon] (Communications/Connectivity Instructions) and supplemental information for creating transactions for [Horizon] while ensuring

compliance with the associated ASC X12 IG (Transaction Instructions)." *See, e.g.*, Horizon Blue Cross Blue Shield of New Jersey EDI HIPAA ANSI X12 Companion Guide ("Companion Guide") at 2.

68.     All the claims at issue have an associated 837. The 837 data structure required by Horizon includes an entry for a Horizon-generated pre-authorization number for the specific claim being submitted. *Id*. at 16 ("2400 / REF02 / Prior Authorization Number Reference Identification / Must contain Horizon BCBSNJ Prior Authorization number") (emphasis added).

69.     Once the HCFA or 837 is transmitted to the insurance company, the insurance company must acknowledge receipt within two days. Upon receiving the 837, Horizon has two options: accept the claim from the out-of-network provider or reject the claim.

70.     If Horizon accepts and processes the transaction (claim(s) and incurred charges), then it generates a document known as an "Electronic Remittance Advice" or an "835," which is a record of claims adjudication or adjustment and payment for the submitted claim. An 835 is not a rejection of the claim. The 835 is then required to be transmitted to the provider's office and maintained by Horizon in the standard or original format for auditability.

71.     Horizon accepted all of the claims composing the nearly $159 million billed amount identified in Exhibit A. Horizon provided Advanced Spinal with an 835 for each of those claims.

72.     If Horizon rejects a claim, it does not generate an 835. Rather, it must generate an EDI data record referred to as a "999" and transmit that to the provider's office. Companion Guide at 12 ("A 999 will be utilized to indicate functional acknowledgement when a file/transaction is rejected for non-compliance."). A rejected claim also triggers the creation of a CCD+ Addenda in the amount of $0.00. Advanced Spinal did not receive a 999 for any of the Horizon claims or a CCD+ Addenda for $0.00.

73. Yet, Horizon's so-called "acceptance" of the claims for processing did not mean that Horizon would actually pay Advanced Spinal the amount sought on the 837s. Instead, Horizon's policy and practice was to accept the 837 and then negotiate down the claim amount to well-below the prices Horizon was alleged to pay.

74. When billing Horizon for the care and treatment of Horizon subscribers, Advanced Spinal follows the industry standard Current Procedural Terminology ("CPT") coding system. The CPT system is a coding system developed by the American Medical Association ("AMA") and is designed to communicate uniform information about medical services and procedures among physicians, coders, patients, and payers. Each five-digit CPT code corresponds to a particular medical, surgical, or diagnostic service provided, and Horizon requires that Advanced Spinal identify the applicable CPT codes on the bills Advanced Spinal submit to Horizon.

75. The Horizon claims at issue in this case comprise a total of 836 claims for reimbursement for medically necessary, covered, elective services, rendered to Horizon subscribers. Each of the Horizon claims at issue in this case corresponds to a particular CPT code billed to Horizon for services or supplies provided to a Horizon subscriber.

**B.** **Horizon's Failure to Pay Advanced Spinal What is Owed**

76. Fully detailing all of the strategies and tactics Horizon employed and continues to employ to avoid paying medical providers, such as Advanced Spinal, is beyond the scope of this Complaint. Some Horizon strategies and tactics are:

    (a)    Forcing providers to re-submit otherwise completely proper claims;

    (b)    Reprocessing otherwise properly submitted claims;

    (c)    Falsely accusing providers of engaging in fraud or other misconduct to cut off any obligation to pay the provider and subject the provider to unjustified and pre-textual investigations by Horizon's Special Investigations Unit ("SIU") (never referring the matter to prosecuting authorities, which New Jersey law requires);

(d)  Making agreements and promises to pay the provider but never, in fact, making payment;

(e)  Paying claims outside the required ACH transfer protocol required by HIPAA, including sending hard copy cash redemption cards for each claim to providers that would require them to either manually enter the cash redemption card 16-digit ID number or pay the 2%-4% transaction fee for using the card—which Advanced Spinal has come to learn would also net Horizon a 1% to 2% fee for the use of the cards;

(f)  Forcing providers to engage in unjustified and baseless appeals and then failing to respond to the appeals;

(g)  Converting appeals to "inquiries" to avoid federal and state notice and documentation requirements;

(h)  Threatening to make a payment directly to the patient in an effort to extract a concession from the provider to accept a lower than required payment;

(i)  Conjuring improper and unjustified problems with the claims submitted to justify either non-payment or reduced payment;

(j)  Wrongfully processing claims by out-of-network providers as if they were claims submitted by in-network providers or wrongfully categorizing an entire out-of-network practice as an in-network practice, allowing Horizon to apply an improper "discount" to reduce the payment amount or to justify non-payment; and

(k)  Falsely representing that Plans require Horizon to treat out-of-network providers as in-network providers.

77.  Advanced Spinal is informed and believes, and on that basis alleges, that Horizon's refusal to comply with applicable regulations, the Plans and procedures governing the payment of valid claims, constitutes institutionalized activity undertaken with the full knowledge and ratification of, and at the direction of, all levels of management of Horizon, including its officers and its Board of Directors.

**C.  Horizon Uses Repricing Companies and its Own Personnel to Prevent Payments to Advanced Spinal**

78.  Horizon engages "repricing" companies, *e.g.*, Zelis, MultiPlan, MARS, and Data iSight, to coerce, harass, induce, and threaten Advanced Spinal's billing staff in order to delay payment until Advanced Spinal relents and agrees to accept an amount well below the incurred

- 23 -

amount. Horizon does this whether the billed amount is reasonable and fell within the payment guidelines it publishes or the provisions of any particular Plan. Horizon will almost always process claims as if Advanced Spinal is an in-network provider and has already agreed to participate in its "negotiation" process. If one repricing company does not persuade a provider to reduce or withdraw the amount claimed, then Horizon shifts the claim to another repricing company, and then another, and then another, each time starting the process over and further delaying resolution and payment.

79. A recent example shows Horizon's arbitrary and capricious conduct and its use of repricing companies to attempt to extract concessions from Advanced Spinal independent of what Horizon is required to pay under the Plans. In 2023, an Advanced Spinal surgeon performed a complex scoliosis reconstruction on Patient 1, a Horizon subscriber, in order to treat Patient 1's severe spinal deformity caused by scoliosis.[3] As a result of the surgery, Patient 1's scoliosis curve was straightened, pain was eliminated, and Patient 1 could return to daily living and athletic activities with no restrictions. For that surgery, on January 31, 2023 Advanced Spinal submitted a claim for $651,728.00 using CPT codes 2216, 22802, 22212, 20936, 22843, and 20930, consistent with the 90th percentile of FAIR Health. Horizon accepted the claim and sent it to processing without any reservation. Instead of receiving payment, on March 20, 2023, Advanced Spinal received a fax from John Howland, an employee of repricing company Medical Audit & Review Solutions ("MARS"). In the fax transmittal letter and the attached "negotiation terms" sheet, Mr. Howland offered to pay Advanced Spinal a mere *$1,069.57 or 0.16% of the billed*

---

[3] Because Patient 1's claim was settled and paid, this particular claim is not at issue in the Complaint and is included as an example of Horizon's practice of delaying and avoiding paying on its obligations.

*amount.* That offer was untethered to any benchmark or Plan language. Rather, Mr. Howland claimed that "MARS physicians" had "concerns" with the claim, including the lack of "clear evidence of extraordinary circumstances to explain the high charges."

80. In a response sent the same day, Advanced Spinal reminded MARS that Horizon had already accepted the claim under the applicable Plan. Advanced Spinal rejected MARS's offer but stated it was willing to accept a 15% discount. A day later on March 21, 2023, without addressing the merits of Advanced Spinal's response, Mr. Howland rejected Advanced Spinal's counteroffer and offered to pay $16,877.84 of the incurred amount. After rejecting Advanced Spinal's same-day counteroffer to discount the claim by 18%, Mr. Howland increased his offer to $30,000.00, claiming it was his "best" offer and the "absolute maximum" he was authorized to "allow". He further threatened that if Advanced Spinal did not accept this payment, he would "send the claim back to the payor for processing, with no guarantee of a set payment rate." *Id.* Mr. Howland provided no explanation under the Plan language for this offer. Advanced Spinal rejected this offer.

81. Over a month later on May 4, 2023, another employee of MARS, Mary Pacheco, sent a fax *restarting* the negotiation process and offered Advanced Spinal $64,640.90. MARS now claimed that some of the CPT Codes were "Non-Covered Charges," despite the fact that Horizon had already determined that the surgery was medically necessary, provided pre-authorization, and accepted the claim. After another round of back and forth, MARS finally offered to pay Advanced Spinal $355,000.00, which Ms. Pacheco claimed, like Mr. Howland, was the "best" offer, which if rejected, would restart the process. After multiple rounds of MARS's and Horizon's coercive tactics and nearly four months after submitting the claim, Advanced Spinal settled for a nearly fifty percent discount. And still, it took Horizon several months to make any

payment on the settlement, and perhaps, most incredibly, even that payment was not for the fully agreed upon settlement amount.

82.     Advanced Spinal has been forced to engage in thousands of negotiations like this one despite the fact that Horizon routinely pre-authorizes treatments and accepts Advanced Spinal's claims when submitted for payment.

### D. To Avoid Paying, Horizon Wrongfully Engages in Pre-Payment Audits and Refers Advanced Spinal's Claims to Horizon's "Special Investigations Unit"

83.     Horizon initiated SIU pre-payment "audits," or pre-payment review generally, for purposes of delaying payment and coercing Advanced Spinal to accept severely reduced payments during the "negotiation" process with the repricing companies.

84.     Horizon has substantially limited its payments, and in some instances stopped paying Advanced Spinal altogether, for the treatment and care of Horizon patients.  Almost every time Advanced Spinal submits a claim, Horizon's response is to send a letter along the following lines:

> Dear Provider (Facility Greeting) or Health Care Professional (Professional Greeting):
>
> Horizon Blue Cross Blue Shield of New Jersey received the above-noted claim on [date].  We need additional information before we can process this claim.
>
> **For tracking and timeliness, you must send a copy of this letter and the following documentation.**  If the requested information is not received by **05-25-2023**, we will not consider the claim for payment.
>
> - Copies of Patient Intake forms
> - Daily Chart notes / Progress notes
> - Laboratory testing results / requisition forms
> - Diagnostic testing results
> - Operative reports
> - Anesthesia records

- Consultant records /reports
- Nursing notes

85.     Horizon also engages third-party companies, like TurningPoint HealthCare Solutions, to send similar pre-payment audit requests.  Often these requests demand a substantial amount of medical records and threaten to deny claims unless a response is provided within a limited timeframe, often 10 days.  Horizon subjects providers, including Advanced Spinal, to these pre-payment audits even after Horizon has represented that no pre-authorization is required and even after Advanced Spinal sought and/or obtained pre-authorization from Horizon.  Even after Advanced Spinal complies with Horizon's arbitrary request for voluminous amounts of medical data, Horizon further delays payment by demanding additional information.

86.     For instance, in 2023, Advanced Spinal performed a total disc arthroplasty, a spinal procedure used to treat damaged and degenerated spinal discs, on Horizon subscriber Patient 2.[4] Horizon informed Advanced Spinal that no pre-authorization was required.  For that surgery, on March 30, 2023, Advanced Spinal submitted a claim for $142,855.00, consistent with the 90th percentile of FAIR Health.  On April 10, 2023, Horizon sent a letter demanding medical information before it would pay the claim.  Advanced Spinal sent the requested medical information to Horizon within the period requested.  To date, Horizon has only paid $2,688.60 on this claim.

87.     Similarly, in 2023, Advanced Spinal performed surgery on Horizon subscriber Patient 3.[5]  Prior to the procedure, a Horizon represented to Advanced Spinal personnel that no pre-authorization was required under Patient 3's Plan.  For that surgery, on May 22, 2023,

---

[4]      Patient 2's claim is detailed in Exhibit A at Control No. 780.

[5]      Patient 3's claim is detailed in Exhibit A at Control No. 781.

Advanced Spinal submitted a claim for $129,980.00, consistent with the 90th percentile of FAIR Health. Advanced Spinal relied upon Horizon's representation. Contrary to Horizon's representations, over a month later, Horizon sent a letter to Advanced Spinal demanding additional information from Advanced Spinal to "determine the eligibility of [the procedure]" and deferring payment of the claim. This is not an isolated instance. Horizon has repeatedly authorized procedures only to later delay or deny payment altogether.

88. Horizon also sends SIU letters to Advanced Spinal on claims that are subject to its "negotiation" process as a means to pressure and coerce Advanced Spinal to accept severely reduced payments. For instance, in 2022, an Advanced Spinal surgeon performed a spinal fusion surgery on Patient 4, a Horizon subscriber.[6] For that surgery, on December 23, 2022, Advanced Spinal submitted a claim for $170,584, which tracked the 90th percentile of FAIR Health for CPT codes 22551, 22845 59, 22853, 20930, and 20931. Horizon accepted the claim and sent it to processing without any reservation. Instead of receiving payment, on October 13, 2022, Advanced Spinal received a letter from a Horizon employee setting out the attached "negotiation terms" sheet. Horizon offered to pay Advanced Spinal a mere *$23,096.40 or 14% of the initial billed amount*. That offer was untethered to any benchmark or Plan language. After a series of back and forth with Horizon, the claim was then sent to MARS to continue the "negotiation" process. The claim was then transferred back to Horizon after Advanced Spinal rejected MARS's offer. Horizon responded by offering $17,751.00, *less than* its initial offer of $23,096.40. On phone calls with Advanced Spinal's employees, the Horizon representative argued, without any basis or reference to any Plan, that the claim was not covered. When confronted with the fact that Horizon

---

[6]     Patient 4's claim is detailed in Exhibit A at Control No. 662.

incorrectly categorized the claim as in-network in the 835 record, Horizon's representative finally admitted that the claim was incorrectly processed as an in-network claim. Despite this, Horizon continued to refuse to pay Advanced Spinal what it was owed.

89. On January 7, 2023, after Advanced Spinal had again rejected Horizon's offer to pay a mere 10% of the billed amount, Horizon sent Advanced Spinal a letter from SIU, threatening to deny the claim for payment unless Advanced Spinal provided a voluminous amount of medical records when no preauthorization was required on the claim. Horizon's referral of Advanced Medical's claim to the SIU during the pendency of its coercive "negotiation" practice was an attempt to intimidate Advanced Spinal into accepting a grossly reduced amount on its claim. This is not an isolated instance, but a regular occurrence.

90. Interposing unilateral deadlines and delay, demanding substantial amounts of (irrelevant) information for many of Advanced Spinal's requests for payment, even after pre-authorization is provided, and sending "negotiated" claims to Horizon's SIU is inconsistent with applicable regulations and Horizon's published requirement for perfecting a submission for payment. On information and belief, the sole purpose of this activity by Horizon was to delay or reduce claims and to manufacture an additional non-substantive, artificial basis to deny and force severe underpayment of Advanced Spinal's claims.

91. Horizon sent Advanced Spinal hundreds of these pre-payment audit letters, far more than Horizon's meagerly staffed SIU could ever hope to process. Given the nature and frequency of the SIU letters that Advanced Spinal received, it seems unlikely, if not impossible, that Horizon is engaged in a manual review of these claims submitted. On information and belief, Advanced Spinal believes that the SIU letters and pre-payment review letters are being generated automatically.

**E.** **Horizon Compels Advanced Spinal to Engage in the Expense of an Unwarranted Appellate Process.**

92. By significantly underpaying Advanced Spinal's claims, Horizon forces Advanced Spinal to engage in an appeals process. This is by design. As the appeals serve as a pre-textual basis for delaying and denying payment on otherwise valid claims.

93. Often after Advanced Spinal has initiated an appeal, Horizon will freeze the appeal until a "signed member authorization" is received. Even after Advanced Spinal provides a member authorization, Horizon will often reject the authorization claiming it is "not valid for the member's Home Plan."

94. Horizon also sends appeals to member's "Home Plans" for review and advises Advanced Spinal to "contact the member" directly if no response is provided from the member's Home Plan within a certain period of time.

95. Horizon will also process Advanced Spinal's claims as "in-network" claims in the 835 and deny or delay payment on the claim on that basis. Horizon representatives have admitted this in dozens of recorded phone calls with Advanced Spinal's employees.

96. Horizon ignores the terms of its Plans and legal requirements for prompt/reasonable payment, purposefully underpaying out-of-network providers, including Advanced Spinal, and intentionally delaying the claims adjudication process in the hope that providers will simply give up and accept reduced payment in order to obtain some reimbursement and free themselves from the endless appeals process.

**F.** **Horizon's Payment of Claims is Arbitrary and Detached From What its Own Plans Require**

97. When a claim is denied or when a claim is underpaid, Advanced Spinal contacts Horizon or its representatives for an explanation of the payment decisions associated with the

- 30 -

claim and for additional, if not proper, payment for the claim. As discussed above, Horizon provides Plan members and beneficiaries with out-of-network benefits. In most instances, and in all non-emergent surgical claims, Horizon confirms in writing or on a call that the patient is covered by Horizon insurance and has provided Advanced Spinal with sufficient information to inform the patient about his or her potential financial responsibility.

98.     Horizon, whether for a fully insured Plan or a self-funded Plan administered by Horizon, publishes the payment obligations for out-of-network services in a Plan-specific Summary Plan Description, as outlined above. When Advanced Spinal engages on claim-specific discussions or claim-specific negotiations with Horizon or its representatives, those specific terms of the Summary Plan Description or Horizon's payment obligations associated with those terms are never referenced or discussed.

99.     Instead, upon information and belief, Horizon refuses to pay the amounts the underlying Plans require and makes payment decisions based on arbitrary and inapplicable standards.

100.    For example, in 2022, Dr. Gatto operated on Patient 5, a Horizon subscriber.[7] For those services, Advanced Spinal submitted a claim for CPT codes 63047 and 63048 totaling over $100,000.00, consistent with 90th percentile of FAIR Health. Despite accepting the claim for payment, Horizon has yet to make any payment.

101.    Horizon has also refused to pay Advanced Spinal for claims citing to Advanced Spinal's failure to comply with the No Surprises Act. The No Surprises Act only applies to

---

[7]     Patient 5's claim is detailed in Exhibit A at Control No. 599.

emergency and ambulance services and is therefore not applicable to the vast majority of Advanced Spinal's claims.

102. When Horizon does pay, its payment patterns are completely unjustified and wholly arbitrary. There is often no rhyme or reason to Horizon's payment calculations. Horizon's pattern of payment for the same procedure performed on patients on the same health benefits plan varies widely. For example, take CPT codes 63047 and 63048:

| Patient[8] | Date of Service | Amount Billed | Amount Paid | Percent Paid | CPT |
|---|---|---|---|---|---|
| Patient 6 | 2020 | $202,500 | $10,187.56 | 5% | 63047, 63048 |
| Patient 7 | 2020 | $202,500 | $105,486 | 52% | 63047, 63048 |
| Patient 8 | 2019 | $202,500 | $3,504.17 | 2% | 63047, 63048 |

---

[8] Patient 6 through Patient 8's claims are detailed in Exhibit A at Control Nos. 231, 242, and 77, respectively.

Similarly, for CPT codes 20930, 22558, 22845, and 22853, for example:

| Patient[9] | Date of Service | Amount Billed | Amount Paid | Percent Paid | CPT |
|---|---|---|---|---|---|
| Patient 9 | 2020 | $152,815 | $1,658.50 | 1% | 20930, 22558, 22845, 22853 |
| Patient 10 | 2020 | $152,815 | $60,187.50 | 39% | 20930, 22558, 22845, 22853 |

103. Horizon can provide no justification for the wide range of payment rates for treatment of one patient with the same coverage during the entire treatment period. Horizon's arbitrary conduct is the norm; it is not an aberration.

### G. Horizon's Tactics Have Worked and Advanced Spinal's Reimbursement Rates have Plummeted

104. Medical healthcare costs are increasing nationwide and are projected to increase even more.[10] Specific to this case, various constituencies have projected that healthcare costs in New Jersey are rising and will continue to rise. Horizon itself has represented publicly that "rising inflation continues to impact spending for the foreseeable future."[11] In fact, Horizon demanded of

---

[9] Patient 9 and Patient 10's claims are detailed in Exhibit A at Control Nos. 211 and 283, respectively.

[10] *NHE Fact Sheet*, CMS.GOV, https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/NationalHealthExpendData/NHE-Fact-Sheet (last modified Feb. 17, 2023)

[11] *Hearing on Horizon Blue Cross Blue Shield Application to Reorganize into a Not-for-profit Mutual Holding Company System*, Dept. of Banking and Insurance (2022) (written Testimony of Jennifer Velez, Executive V.P. for Health and Network Solutions).

its largest client, the State of New Jersey, a "24% increase for medical and a 3.7% increase for pharmacy benefits for active public workers, as well as a 15.6% increase in medical and a 26.1% increase in pharmacy benefits for public workers who retired before the age of 65."[12] Presumably, Horizon provided some type of historical analysis or projection to justify such a brazen request.

105. While Horizon demands more money from its clients, that money is not going to pay Advanced Spinal for its life-changing care for Horizon subscribers. To the contrary, for the same services, for the same Plan terms, Horizon pays less, and less, and less. Advanced Spinal's annual reimbursement rates from Horizon have plummeted.

106. In short, Horizon's tactics, complicit with the repricing companies, have worked. Horizon simply does not pay Advanced Spinal what it is owed.

### V. ADVANCED SPINAL EXHAUSTED AVAILABLE INTERNAL APPEALS REMEDIES

107. Advanced Spinal has exhausted available appeals or such appeals are futile given Horizon's refusal to process appeals consistent with 29 C.F.R. § 2560.503-1. Plans administered by Horizon have procedures for administrative appeal of claim adjudication. Advanced Spinal files internal appeals, with the result being that Horizon adheres to its initial decision or, more commonly, mischaracterizes the appeal as an "inquiry" and punts the matter to a defendant repricing company.

108. Plans that are self-funded by the employer or other organizations include provisions for appealing claims decisions. The self-funded Plans typically provide for internal appeals with Horizon and, where required, an external appeal per the Summary Plan Description or to the

---

[12] Hall, Derek, *N.J. public workers face big increase in health insurance rates in coming year*, NJ.COM (Jul. 23, 2022), https://www.nj.com/news/2022/07/nj-public-workers-face-big-increase-in-health-insurance-rates-in-coming-year.html.

Department of Labor. Advanced Spinal has timely requested such internal appeals for the claims under the self-funded Plans at issue.

109. Since 2018, Advanced Spinal has initiated appeals on the at-issue claims. Horizon has largely rejected Advanced Spinal's appeals, affirming its original adjudication or making a nominally higher additional payment. Horizon provides little or no analysis or explanation and leaves the claims grossly underpaid.

110. Appealing rarely results in an adjustment to the initial payment. Horizon refuses to provide any meaningful response to these appeals, or in many cases, simply reaffirms its initial reimbursement without explanation. Even if Advanced Spinal reaches an agreement with Horizon, Horizon often fails to pay the amount demanded on appeal. It is futile for Advanced Spinal to continue to seek internal or external appeals with Horizon for any further claims payments.

111. Like the self-funded Plans, to the extent some of the claims at issue are covered by non-ERISA Plans, Advanced Spinal has likewise completed the internal appeals. Horizon, however, simply affirmed its initial decisions or paid slightly higher amounts, providing little or no analysis, and leaving the claims still grossly underpaid. Accordingly, any additional attempts to appeal the Horizon Claims would be futile.

112. Because seeking appeals results in little to no adjustment to the initial payment, and because Horizon refuses to provide any meaningful response to Advanced Spinal's appeals, or in most cases, simply reaffirms its initial payment amount without explanation, it would be futile for Advanced Spinal to continue to seek internal or external appeals with Horizon.

113. Moreover, Horizon has failed to follow the proper notice and appeal requirements that require Horizon to adequately explain the basis for its dramatic underpayments to Advanced Spinal. *See* 29 C.F.R. § 2560.503-1(g). In particular, Horizon has issued adverse benefit

determinations as defined under 29 C.F.R. § 2560.503-1(m) for the Horizon Claims and has failed or refused to: (a) provide the specific reason or reasons for the denial of claims; (b) provide the specific Plan provisions relied upon to support the denials; (c) provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; (d) describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and (e) notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits.

114.    Exhaustion is therefore futile pursuant to 29 C.F.R. § 2560.503-1(l) because Horizon has failed to follow the minimum standards required under ERISA and its regulations.

115.    In addition, in its appeals to Horizon for the claims, Advanced Spinal has requested the following information related to the denials of the Horizon claims: (a) all contracts detailing any and all contractual obligations with Horizon; (b) Plan documents specifically identifying a "Legislative Fee" schedule; (c) the identity of the "Originating Payer" [the Plan]; (d) the "reassociation" and trace information associated with the claim from the Plan; (e) Plan documents specifically identifying the adjustment reason utilized in the EOB; and (f) the Horizon definition and/or explanation of all standardized Claim Adjustment Reason Code utilized in its ERA; (g) the identity of the "Plan" [Tax ID #] and its Originating Depository Financial Institution ("ODFI") information; (h) the HIPAA required Electronic Data Interchange policy and procedures; (i) the claims processing manual which identifies the provider requirements for submission if different than HIPAA standards; (j) all adjustments codes utilized if the standardized "CARC," "RARC" and Group Codes are not used; (k) all anti-assignment provisions consistent with State and Federal regulations.  Horizon has refused to provide the above requested information in violation of 29 U.S.C. § 1133(2) and 29 C.F.R. §§ 2560.503-1(h), (m)(8).

116. Exhaustion is therefore futile pursuant to 29 C.F.R. § 2560.503-1 because Horizon has failed to provide the requested documents necessary for Advanced Spinal to evaluate the claim denials and otherwise failed to follow the minimum standards required under ERISA and its regulations. Horizon has thus offered no meaningful administrative process for challenging its underpayment and denial of claims.

117. This action is timely commenced within six years after Advanced Spinal was notified by Horizon that it was rejecting or dramatically underpaying Advanced Spinal's claims for the services provided to Horizon subscribers, and otherwise within six (6) years after each of the Advanced Spinal's claims against Horizon accrued.

## VI. HORIZON SUBSTANTIALLY AND UNLAWFULLY UNDERPAYS ADVANCED SPINAL'S CLAIMS

118. Since 2018 and continuing through the present, Horizon has refused to pay or underpaid Advanced Spinal on over 836 claims seeking reimbursement for medical services rendered to Horizon subscribers who had out-of-network benefits. Each of the Horizon claims at issue in this case corresponds to a particular CPT code billed to Horizon for services or supplies provided to a Horizon subscriber.

119. Advanced Spinal invoiced Horizon approximately $159 million for the services rendered to Plan members, which is consistent with 90th Percentile FAIR Health for the services rendered. After taking into account co-insurance, cost-share and deductibles, Advanced Spinal was paid around 13% of that amount and Horizon underpaid Advanced Spinal by close to $137 million.

120. Exhibit A to this Complaint is a chart detailing the underpayment for Advanced Spinal. In addition, Exhibit A also contains is the medical claims data associated with the 836 at-

issue claims. Exhibit A sets forth, among other things, the following information (where available) for each of the Horizon claims:

(a) Provider Name;

(b) Invoice Number;

(c) Patient Name;

(d) Date of Service;

(e) Billed Amount;

(f) Amount Horizon Paid to Advanced Spinal For Services;

(g) Amount of Co-Insurance;

(h) Amount of Deductible;

(i) Amount Outstanding on the Claim (excluding interest and late fees);

(j) Percentage of the Claim Paid by Horizon;

(k) ERA Production Date;

(l) Check Date;

(m) Policy Number;

(n) Applicable CARCs;

(o) Claim Number;

(p) Check Number(s); and

(q) Applicable CPT Codes.

121. Exhibit A identifies the baseline amount Horizon owes Advanced Spinal.

**COUNT I**

**BENEFITS DUE UNDER ERISA § 502(A)(1)(B)**
**(NON-GOVERNMENT AND NON-CHURCH SPONSORED PLANS)**

122. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

123. Advanced Spinal provided services to Horizon subscribers for the 836 claims at issue in this lawsuit.

124. Advanced Spinal has an assignment of benefits from each patient for each claim at issue. As assignee, Advanced Spinal has standing to pursue payment for the medical services provided to Horizon subscribers.

125. The Horizon ERISA Plans do not prohibit Plan members from assigning their rights to benefits to Advanced Spinal, including the right of direct payment of benefits. To the extent Horizon ERISA Plans purport to prohibit the assignment of benefits to Advanced Spinal, Horizon waived any anti-assignment provisions, ratified the assignment of benefits, and waived or is estopped from using any anti-assignment provisions against Advanced Spinal due to Horizon's course of dealing with and representations to Advanced Spinal.

126. Advanced Spinal's unrecovered charges are consistent with 90th percentile of the FAIR Health benchmark.

127. Advanced Spinal's charges for treatments provided should have been paid in full.

128. At all relevant times, Advanced Spinal was an out-of-network provider.

129. Each of the services were medically necessary and covered by the Plans.

130. Advanced Spinal received pre-approval certifying that the services were covered by the Plans.

131. Through a variety of wrongful tactics, Horizon has delayed reimbursement and/or refused to reimburse Advanced Spinal for the covered services at the contracted for rates.

132. To the extent Horizon's reimbursement paid to Advanced Spinal purport to be based on rates Horizon pays to in-network providers, Horizon intentionally or recklessly used or generated inaccurate data resulting in underpayment to Advanced Spinal in violation of the Plans.

133. Horizon violated the terms of the Plans by refusing to make out-of-network payments for charges covered by the Plans in violation of f ERISA 502(a)(1)(B) and 29 U.S.C. § 1132(a)(1)(B).

134. As a result of, among other acts, Horizon's numerous violations of ERISA, any appeals are deemed exhausted or excused, and Advanced Spinal is entitled to recover unpaid/underpaid benefits from Horizon. Horizon's miscalculation of the amounts due and payable under the Plans for each of the Horizon claims violates the terms of the Plans, for which Advanced Spinal is entitled to relief under 29 U.S.C. § 1132(a)(1)(B).

135. Thus, under 29 U.S.C. § 1132(a)(1)(B), Advanced Spinal is entitled to recover unpaid/underpaid benefits from Horizon for each of the 836 claims in the amounts detailed on Exhibit A or as otherwise to be determined at trial. Advanced Spinal is also entitled to declaratory and injunctive relief to enforce the terms of the Plans in the future, including by requiring Horizon to compensate Advanced Spinal at each Plan's required rates, and to clarify their right to future benefits under such Plans, as well as their attorneys' fees and costs.

## COUNT II

## BREACH OF ERISA FIDUCIARY DUTIES
## (FOR NON-GOVERNMENT AND NON-CHURCH SPONSORED PLANS)

136. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

137. Pursuant to 29 U.S.C. § 1132(a)(3), a civil action may be brought by "a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

138. Advanced Spinal, as the assignee of ERISA members and beneficiaries under the Plans, is entitled to assert a claim for relief for Horizon's breach of fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) and (B).

139. Horizon is an ERISA fiduciary of the Plans within the meaning of 29 U.S.C. § 1002(21)(A) because, at a minimum, it exercises authority or control respecting management or disposition of Plan assets.

140. As an ERISA fiduciary, Horizon was required to make claim payment decisions under the Plans for the exclusive purpose of providing benefits to participants and beneficiaries, including Advanced Spinal as their assignees, and defraying reasonable expenses in administering the Plans. 29 U.S.C. § 1104(a)(1)(A). This duty requires Horizon to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of its beneficiaries.

141. As an ERISA fiduciary, Horizon also owed Advanced Spinal a duty of loyalty, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character. 29 U.S.C. § 1104(a)(l)(B).

142. Horizon violated its fiduciary duty of loyalty and care, and engaged in prohibited transactions, through myriad acts of self-dealing, described more fully above. Among other things, Horizon retained Plan funds that should have been paid to Advanced Spinal and used them to pay itself and third-party repricing companies unjustified, undisclosed, and improper "cost containment fees."

143. Pursuant to 29 U.S.C. § 1132(a)(3), Advanced Spinal is entitled to equitable relief to remedy Horizon's self-dealing and other violations of its ERISA fiduciary duties, including declaratory and injunctive relief. Advanced Spinal is also entitled to seek equitable relief under 29 U.S.C. § 1109(a), including for breach of fiduciary duty by not providing covered for benefits to beneficiaries'' assignees.

## COUNT III
## BREACH OF CONTRACT

144. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

145. To the extent that Claims related to benefits or payments owed by Horizon are not associated with an ERISA-governed Plan and/or are not preempted by ERISA, Advanced Spinal is entitled, as the assignee of rights and benefits held by Horizon subscribers, to maintain a breach of contract claim under New Jersey law.

146. As a result of its course of dealings, including direct communications between Advanced Spinal and Horizon regarding the treatment of and payment for treatment of a patient, including Horizon's pre-approvals, some orally over the telephone and others in writing, a direct contract was created between Advanced Spinal and Horizon for the provision of Advanced Spinal's services to Horizon's covered patients at the rate schedules published by Horizon.

147.    For most patients, before Advanced Spinal treats them, an authorized representative of Advanced Spinal communicates directly with an authorized representative of Horizon. Those communications may be verbal or electronic. Those communications confirm, among other things, that the patient is covered by a Plan, that the treatment recommended by Advanced Spinal is covered by the Plan, that Advanced Spinal is authorized to provide the treatment as an out-of-network provider, that Advanced Spinal will be paid consistent with the Plans for such services, and the amount of any patient financial responsibility for the treatment proposed. By providing the patient responsibility amount, Horizon makes clear that it will pay Advanced Spinal the difference between the patient responsibility and the amount Advanced Spinal bills.

148.    Advanced Spinal accepted the terms and, in reliance upon the agreed terms, provided the proposed treatments on the patients, and complied with the terms of the implied contract by following Horizon's procedures and submitting invoices consistent and within the parameters of Horizon's guidelines and published rate schedules.

149.    After the treatments were provided to the Horizon subscribers, Advanced Spinal submitted claims to Horizon.

150.    Horizon did not pay the submitted claims as agreed to by Horizon and Advanced Spinal. Rather, Horizon materially breached the agreements by causing unwarranted delay, then refusing to pay the claims Advanced Spinal submitted, or grossly underpaying the claims consistent with its own guidelines in breach of the agreed terms.

151.    Advanced Spinal complied with the terms of the contracts with Horizon, including provision of medical services to Horizon subscribers, save and except those excused by Horizon's material breaches.

152. As a direct and proximate result of Horizon's material breaches of the direct contractual agreements with Advanced Spinal, including without limitation the non-payment or unexcused underpayment of Advanced Spinal's bill for services provided, Advanced Spinal suffered damages, in amounts to be proven at trial.

153. As the result of Horizon's failure to comply with the terms of the Plans, Advanced Spinal, as assignee, has suffered damages and lost benefits for which it is entitled to recover damages from Horizon, including unpaid benefits, restitution, interest, and other contractual damages sustained by the Advanced Spinal.

**COUNT IV**

**BREACH OF IMPLIED CONTRACT**

154. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

155. Advanced Spinal has an implied contract with Horizon premised on both Horizon's published reimbursement calculations for out-of-network providers and its numerous discussions with Horizon employees regarding the medical services provided.

156. Advanced Spinal provided services to Horizon subscribers with the expectation that Horizon would compensate it in accordance with Horizon's published guidelines and, in some instances, communications with Horizon representatives.

157. Advanced Spinal's billing practices are consistent with Horizons guidelines such that the entire incurred amount should have been paid. Advanced Spinal bills its services at a reasonable and customary rate. Horizon generally agrees to pay reasonable and customary rates for services out-of-network providers, like Advanced Spinal, provide to Horizon subscribers.

158. Horizon breached the implied contracts by failing to make payment of benefits to Advanced Spinal in the manner and amounts required under the terms of the Plans or as otherwise conveyed by Horizon representatives to Advanced Spinal.

159. Advanced Spinal complied with the terms of implied contract with Horizon, including provision of medical services to Horizon subscribers, except those excused by Horizon's material breaches.

160. As a direct and proximate result of Horizon's failure to comply with the terms of the plans, Advanced Spinal has suffered harm and lost benefits for which it is entitled to recover damages from Horizon, including unpaid benefits, restitution, interest, and other contractual damages sustained, in amounts to be proven at trial.

## COUNT V
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

161. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

162. Each of the agreements pleaded above exist and contain an implied duty of good faith and fair dealing.

163. As set forth more fully above, upon information and belief, the Plans require payment of medical expenses incurred for treating Horizon subscribers.

164. For those contracts not directly between Advanced Spinal and Horizon, Advanced Spinal received an assignment of benefits for each of the claims at issue. Advanced Spinal was assigned the right to receive payment under the Plans for the services rendered to Horizon subscribers. Pursuant to said assignments, Horizon is contractually obligated to pay Advanced Spinal for these services.

165. Upon information and belief, the non-ERISA Plans did not prohibit the members from assigning their rights to benefits to Advanced Spinal, including the right of direct payment of benefits. If some ERISA Plans prohibited the assignment of benefits to Advanced Spinal, then Horizon waived any anti-assignment provisions, ratified the assignment of benefits, and waived or is estopped from using any anti-assignment provisions against Advanced Spinal due to Horizon's course of dealing with and representations to Advanced Spinal.

166. Section 17:29B-3 *et seq*. of the New Jersey code defines the public interests of New Jersey and prohibits unfair methods of competition and unfair or deceptive acts or practices in the business of insurance.

167. Horizon breached its duty of good faith and fair dealing owed to Advanced Spinal, as assignee of rights and benefits under the Plans, in a number of ways, described more fully above.

168. In undertaking the wrongful conduct described in the preceding paragraph, Horizon acted in bad faith with the purpose of depriving Advanced Spinal of the reasonable expectations and benefits of the contracts, both the direct contracts between Advanced Spinal and Horizon, as well as those between Horizon and Advanced Spinal's assignors.

169. Horizon's wrongful conduct, in derogation of its duty of good faith and fair dealing under the contracts, caused Advanced Spinal to suffer damages, in amounts to be proven at trial.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

170. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

171. Horizon created a duty of care to Horizon subscribers and their assignees to comply with its representations to out-of-network providers about reimbursement, with the expectation

and intent the out-of-network providers would rely upon such representations. Horizon's duties of care to beneficiaries includes duties of candor and disclosure under 29 C.F.R. § 2560.503-1(g).

172. Horizon breached the duty of care to Horizon subscribers and their assignees and made material misrepresentations of fact by causing representations to be made to Advanced Spinal regarding the existence and approval of treatment coverage, treatment pricing, and the patients' responsibility for a portion of the charge for the treatment. Horizon subscribers and their assignee, Advanced Spinal, reasonably relied to their detriment on Horizon's misrepresentations.

173. At the time Advanced Spinal treated Horizon subscribers, Advanced Spinal reasonably expected to be compensated for the medical treatment and services that it provided in accordance with Horizon's representations about payment to out-of-network providers and Horizon's express approvals, including that claims were accepted without reservation. Advanced Spinal reasonably relied upon Horizon's representations related to acceptance and payment of its claims.

174. The value of the treatment and services that Advanced Spinal rendered is the full billed amount. The reasonableness of the billed amount fees is confirmed by reference to other industry sources including, but not limited to, FAIR Health.

175. Had Advanced Spinal known the true facts, that it was not going to be reimbursed in accordance with Horizon's out-of-network reimbursement schedules or Horizon's express approvals, it would not have provided the medical services to Horizon subscribers.

176. As a direct and proximate result of Horizon's negligent misrepresentations of material facts, Advanced Spinal has and continues to suffer damages, in amounts to be proven at trial.

## COUNT VII

### CONVERSION

177. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

178. Advanced Spinal provided services to Horizon subscribers.

179. Advanced Spinal had a right to be promptly reimbursed for the services it rendered to Horizon subscribers and invoiced rates.

180. Advanced Spinal did not consent, contract, or otherwise agree to accept payment at a rate below its rates.

181. Money, including money owed for professional services provided, may be the subject of conversion.

182. At Horizon's direction and consistent with Horizon's intent, Advanced Spinal was not paid or was grossly underpaid for the services provided to Horizon subscribers.

183. Horizon has unlawfully retained funds that would have been payable to Advanced Spinal if it had been paid, as required.

184. As a direct and proximate result of Horizon's conversion, Advanced Spinal has and continues to suffer damages, in amounts to be proven at trial.

## COUNT VIII

### UNJUST ENRICHMENT

185. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

186. Advanced Spinal is entitled to maintain an unjust enrichment claim against Horizon for payment owing for services rendered to the Horizon-insured patients.

187.    By and through its failure to process claims and issue benefits for services rendered by Advanced Spinal in accordance with the Plans through which the Horizon-insured patients received benefits, Horizon has retained moneys to which it is not entitled and to which Advanced Spinal is entitled for services rendered to the Horizon Insured.

188.    Retention of this benefit is unjust and inequitable.

189.    Advanced Spinal has suffered damages as a direct and proximate result of Horizon's actions.

**COUNT IX**

**QUANTUM MERUIT**

190.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

191.    Advanced Spinal provided services and other things of value to Horizon and Horizon-insured patients.

192.    Horizon has not paid for such services and things of value.

193.    Advanced Spinal, therefore, is entitled to payment from Horizon for the reasonable value of the services rendered in an amount to be proven at trial.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Advanced Spinal hereby requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Advanced Spinal demands judgment in its favor against Horizon as follows:

A. Declaring that Horizon has breached the terms of the Plans with regard to out-of-network benefits;

B. Awarding Advanced Spinal all benefits due and owing to it, including the amounts set forth on Exhibit A;

C. Awarding injunctive relief to prevent Horizon from continuing to engage in the alleged conduct that is unauthorized and prohibited by the Plans and applicable law and governing Plans;

D. Advanced Spinal's appellate claims have been exhausted;

E. Declaring that Horizon violated its fiduciary duties under 29 U.S.C. § 1104, and awarding injunctive, declaratory and other equitable relief to redress such violations with respect to the non-state and non-religious health Plans;

F. Awarding profits, contractual damages, and compensatory damages in such amounts as the proofs at trial shall show;

G. Awarding restitution and/or disgorgement for payments improperly withheld by Horizon;

H. Declaring that Horizon has violated the terms of the relevant Plans and/or policies of insurance covering the Horizon subscribers;

I. Awarding reasonable attorneys' fees, as provided by common law, federal or state statute, Plan documents, or equity, including 29 U.S.C. § 1132(g);

J. Awarding costs of suit;

K.      Awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity;

L.      Punitive damages; and

M.      Awarding all other relief to which Advanced Spinal is entitled.

Dated: September 27, 2023

**MCKOOL SMITH, P.C.**

By:   /s/ David Schiefelbein

David Schiefelbein
dschiefelbein@mckoolsmith.com
Hal M. Shimkoski (PRO HAC VICE TO BE
FILED)
hsimkoski@mckoolsmith.com
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
T: (212) 402-6400
F: (212) 402-9444

Jon Corey (PRO HAC VICE TO BE FILED)
jcorey@mckoolsmith.com
1999 K Street NW, Suite 600
Washington, D.C. 20006
T: (202) 370-8300
F: (202) 370-8344

Kristin L. Leveille (PRO HAC VICE TO BE
FILED)
kleveille@mckoolsmith.com
600 Travis Street, Suite 7000
Houston, Texas 77002
T: (713) 485-7300
F: (713) 485-7344

***Attorneys for Plaintiff***

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

I certify that the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated:  September 27, 2023

**MCKOOL SMITH, P.C.**

By: /s/ David Schiefelbein
David Schiefelbein
dschiefelbein@mckoolsmith.com
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
T: (212) 402-6400
F: (212) 402-9444

*Attorneys for Plaintiff*

- 54 -

## LOCAL CIVIL RULE 201.1 CERTIFICATION

I certify under penalty of perjury that the matter in controversy is not eligible for compulsory arbitration because the relief sought does not consist only of money damages and the amount at issue exceeds $150,000, exclusive of interest and costs.

Dated: September 27, 2023

**MCKOOL SMITH, P.C.**

By: /s/ David Schiefelbein
David Schiefelbein
dschiefelbein@mckoolsmith.com
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
T: (212) 402-6400
F: (212) 402-9444

***Attorneys for Plaintiff***